IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 14-cv-00983-CBS

HENRY L. JAMES, JR.
    Plaintiff,
v.

MR. ARGEYS, Shift Commander over BVCF inmates,
    Defendant.

**ORDER REGARDING DEFENDANTS' MOTION TO DISMISS**

THIS MATTER comes before the court on Defendant Argeys' Motion to Dismiss (doc. # 23), filed on August 11, 2014. By Minute Order (doc. #25), dated August 12, 2014, *pro se* Plaintiff Henry L. James, Jr. was directed to file any response he had to Defendant's Motion to Dismiss on or before September 9, 2014. Mr. James filed a Motion for Extension of Time (doc. #28) on September 24, 2014, requesting leave to file his response brief by November 2, 2014. On September 24, 2014, I granted Plaintiff's request and directed him to respond to the Motion to Dismiss on or before November 3, 2014. That Minute Order was mailed to Mr. James' current address at Fremont Correctional Facility in Canon City, Colorado. The court's records indicate that Plaintiff's copy of the September 24, 2014 Minute Order was not returned in the mail as undeliverable. To date, Mr. James has not responded to the Motion to Dismiss.

"[A] district court may not grant a motion to dismiss for failure to state a claim merely because [a party] failed to file a response." *Issa v. Comp USA,* 345 F.3d 1174, 1177 (10th Cir. 2003) (internal quotation marks and citation omitted). "This is consistent with the purpose of Rule 12(b)(6) motions as the purpose of such motions is to test the sufficiency of the allegations

1

within the four corners of the complaint after taking those allegations as true." *Id.* at 1177-78. "Consequently, even if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." *Id.* I have carefully considered the pending motion, the entire court file and the applicable case law.

## FACTUAL BACKGROUND

Mr. James initiated this action on April 7, 2014 with the filing of his Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915 and a *pro se* Prisoner Complaint, along with attached exhibits. On April 10, 2014, Magistrate Judge Boyd Boland directed Mr. James to file an amended complaint after concluding that the original complaint failed "to allege facts that demonstrate how each of the named defendants personally participated in the asserted constitutional violations." Plaintiff also was told that his amended complaint "must comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure and must set forth "simply and concisely, his specific claims for relief, including the specific rights that allegedly have been violated and the specific acts of each defendant that allegedly violated his rights." *See* doc. #6.

On May 6, 2014, Mr. James filed his Amended Complaint asserting under 42 U.S.C. § 1983 violations of his Eighth Amendment right against cruel and unusual punishment allegedly perpetrated by Warden Lenaerich, Case Manager Denwalt and Shift Captain Argeys, who were then assigned to the Buena Vista Correctional Facility (BVCF), in Buena Vista, Colorado. With an Order (doc. #10) dated May 14, 2014, the district court found that Mr. James had "failed to make any allegations demonstrating the personal participation of Warden Lenaerich or Case

Manager Denwalt in the asserted constitutional violation" and dismissed the claims against those two defendants as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(b).

The only claim remaining in this action is directed against Shift Captain Argeys and alleges a violation of Plaintiff's "Eighth Amendment right to be free from cruel and unusual punishment." More specifically, Mr. James asserts that on March 19, 2014, he spoke with Defendant Argeys about "possible problems with me and some other inmates here at the facility BVCF." After Plaintiff provided the names of those individuals, Defendant Argeys "handcuffed me and put me in segregation." Mr. James alleges that Defendant Argeys placed him in punitive without "[filing] a complaint or [making] any record of [Plaintiff] being in segregation." Plaintiff further claims that while in segregation, he was "denied all my rights such as religious (sic.), not being able to contact my family on the phone or my attorney on my appellate proceeding," and that he was "handcuffed to and fro from the shower as well as handcuffed and shackled to and fro from the yard." Mr. James seeks an order requiring Colorado Department of Corrections (CDOC) Headquarters "to move me to another Level III medium facility as soon as possible,"[1] and to compensate him for the time he spent in punitive segregation in the amount of "$150.00 to $300.00 a day."

Defendant Argeys has moved to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6), arguing that Mr. James' claim is barred by the Eleventh Amendment and the doctrine of qualified immunity. Defendant also contends that Plaintiff's claim for

---

[1]The court's records indicate as of May 24, 2014, Mr. James was no longer incarcerated at Buena Vista Correctional Facility. *See* doc. #15 (showing that a court mailing to Mr. James at Buena Vista Correctional Facility was returned as undeliverable because of an insufficient address). On June 3, 2014, Mr. James arrived at Fremont Correctional Facility. *See* doc. # 19.

compensatory damages is barred by the Prison Litigation Reform Act in the absence of any suggestion that Mr. James suffered a physical injury.

## ANALYSIS

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a motion to dismiss may be granted if the court lacks subject matter jurisdiction. The determination of subject matter jurisdiction is a threshold question of law. *Madsen v. United States ex. rel. United States Army Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987). The court applies a rigorous standard of review when presented with a motion to dismiss pursuant to Rule 12(b)(1). *Consumers Gas & Oil, Inc. v. Farmland Indus. Inc.*, 815 F. Supp. 1403, 1408 (D. Colo. 1992)

> Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. A court lacking jurisdiction must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking. A Rule 12(b)(1) motion to dismiss must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction. The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. Accordingly, Plaintiff in this case bears the burden of establishing that this court has jurisdiction to hear his claims.

*Stine v. Wiley*, Civ. No. 07-cv-01250-WYD-KMT, 2008 WL 4277748, at *3 (D. Colo. 2008) (internal quotation marks and citations omitted).[2]

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir.

---

[2]Copies of unpublished cases cited are attached to this Order.

2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitations of the elements of a cause of action will not do." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Id.* As the Tenth Circuit explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007),

> the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.

"The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp.*, 550 U.S. at 556). A complaint must set forth sufficient facts to elevate a claim above the level of mere speculation. *Id.* The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

While *pro se* pleadings should be "construed liberally and held to a less stringent standard than formal proceedings drafted by lawyers," *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), that standard does not override a *pro se* plaintiff's responsibility to provide a simple and concise statement of his claims and the specific conduct that gives rise to each asserted claim. *See Willis v. MCI Telecomms.*, 3 F. Supp. 2d 673, 675 (E.D.N.C. 1998). This court cannot be a *pro se* litigant's advocate. *Hall*, 935 F.2d at 1110. Just as importantly, a plaintiff may not defeat a motion to dismiss by alluding to facts that have not been alleged, or by

suggesting violations that have not been pled. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

*1.     A Claim Against Defendant in his Official Capacity*

The Amended Complaint does not clearly indicate whether Defendant Argeys is being sued in his individual capacity, his official capacity, or both. Where a plaintiff fails to indicate the nature of the liability sought, the court should look to "'the substance of the pleadings and the course of the proceedings' to determine whether the plaintiff is suing the defendants in their individual capacities or their official capacities, or both." *Arceo v. City of Junction City, Kansas*, 182 F. Supp.2d 1062, 1089-90 (D. Kan. 2002) (quoting *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993)). Here, where the Amended Complaint is not completely clear, the court will presume that Defendant Argeys has been sued both in his official and individual capacities.

Assuming that Mr. James is suing Defendant in his official capacity, he is in reality attempting to impose liability on Mr. Argeys' employer, the Colorado Department of Corrections. *See Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988). A suit against a state official in his or her official capacity is treated as a suit against the state. *Hafer v. Melo*, 112 S.Ct. 358, 361 (1991). Absent a waiver, the Eleventh Amendment forbids a suit for damages against a state in federal court. *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). Eleventh Amendment

immunity extends to the states themselves and to those governmental entities that are "arms of the state." *Ambus*, 995 F.2d at 994. States, state officials sued in their official capacities, and governmental entities that are considered "arms of the state" are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). Such entities cannot be sued for monetary damages arising from alleged conduct which deprives a plaintiff of his or her civil liberties. The Colorado Department of Corrections is an arm of the state and thus is entitled to Eleventh Amendment immunity. If the Eleventh Amendment applies, it confers total immunity from suit, not merely a defense to liability. *Ambus*, 995 F.2d at 994 (citation omitted). Thus, any claim for money damages against Defendant Argeys in his official capacity is barred by the Eleventh Amendment and properly dismissed with prejudice for lack of subject matter jurisdiction.

2.   *Physical Injury*

It is well-established that in an action brought pursuant to § 1983, a plaintiff must prove not only a constitutional violation, but also demonstrate that the constitutional deprivation caused him some actual injury. *Miner v. City of Glen Falls*, 999 F.2d 655, 660 (2d Cir. 1993). The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, has heightened this requirement by barring a prisoner from bringing a civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See* 42 U.S.C. § 1997e(a) and (e).[3]

---

[3]While the PRLA requires "physical injury," the threshold may not be particularly high. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (suggesting that the PRLA requirement should be construed consistent with the "well-established Eighth Amendment standard," and must be more than *de minimis,* but need not be significant). *But see Cain v. Commonwealth of Virginia*, 982 F. Supp. 1132, 1135, n. 3 (E.D. Va. 1997) (headaches causing vision loss and

Although Mr. James alleges that he was subjected to cruel and unusual punishment during the period he spent in punitive segregation, a careful reading of the Amended Complaint finds no allegation or use of the phrase "physical injuries." Plaintiff's "Request for Relief" states, without elaboration, that he was placed on "mental medication" on April 10, 2014 apparently as a result of his confinement in segregation. "[A]lthough claims for mental and emotional distress can be brought pursuant to § 1983, . . . § 1997e(e) provides that 'such a suit cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms.'" *Turner v. Schultz*, 130 F. Supp.2d 1216, 1222-23 (D. Colo. 2001) (quoting *Perkins v. Kansas Department of Corrections*, 165 F.3d 803, 807 (10th Cir. 1999)). *See also Flanery v. Wagner*, No. 98-3235, 182 F.3d 931, at *2 (10th Cir. May 19, 1999) (holding that the trial court properly granted summary judgment as to plaintiff's claim for compensatory damages where plaintiff failed to show that he suffered physical injuries as a result of defendant's alleged conduct). For example, where inmates have alleged that defendants were deliberately indifferent to their safety or welfare, or inflicted emotional injury by depriving them of basic necessities of life, courts have applied section 1997e(e) to restrict the availability of judicial remedies if there is no showing of physical injury. *See, e.g., Mason v. Schriro*, 45 F. Supp.2d 709, 716 (W.D. Mo. 1999) ("a review of cases from other courts indicates that [§ 1997e(e)] is most frequently applied where plaintiff alleges that defendants' actions have caused him to fear physical injury and fear for his safety and welfare, but he fails to show any physical injury"). Moreover, "a number of

---

requiring pain medication as well as numbness, joint pain and stomach cramps did not constitute physical injury within scope of § 1997e(e)); *Zehner v. Trigg*, 952 F. Supp. 1318, 1322-23 (S.D. Ind. 1997) (dismissing Eighth Amendment claim based upon prisoners' exposure to asbestos where no physical injury could be shown).

8

courts have held that a prisoner cannot satisfy Section 1997e(e) by alleging only that he suffered from the physical manifestations of mental or emotional injuries." *Hughes v. Colorado Department of Corrections*, 594 F. Supp. 2d 1226, 1238 (D. Colo. 2009).

Quite simply, the Amended Complaint contains no factual allegations that would demonstrate or even infer that Mr. James suffered physical injury caused by conduct attributable to the Defendant. This omission is fatal to Plaintiff's claim for compensatory damages. Nevertheless, Mr. James would not be precluded from recovering nominal or punitive damages if he were to prevail on the merits. *See, e.g., Wares v. VanBebber*, 391 F. Supp. 2d 1237, 1253 (D. Kan. 2004).

*3. Qualified Immunity*

Defendant Argeys has raised the defense of qualified immunity as to the single claim asserted against him. Under the doctrine of qualified immunity, government officials are immune from civil damages liability for constitutional torts as long as their actions could reasonably have been thought consistent with the rights they allegedly violated. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity protects defendants not only from liability, but also from suit. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Such immunity is qualified in that it does not obtain when otherwise immune officials violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Armijo v. Wagon Mound Public Schools*, 159 F.3d 1253, 1260 (10th Cir. 1998) (quoting *Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir. 1997)). Whether Defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

This court must review Defendant's claim of qualified immunity "under the customary

motion to dismiss standard." *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* However, the court is also mindful of the United States Supreme Court's admonition that a ruling on the issue of qualified immunity should be made at the earliest possible stage of the proceeding in order to preserve the protections of the privilege. *See Saucier v. Katz*, 533 U.S. 194 (2001) , overruled in part by *Pearson v. Callahan*, 555 U.S. 223 (2009).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted). In determining whether a right is clearly established, the relevant inquiry is "whether it would be clear to a [reasonable government official] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id*. The plaintiff bears the burden of showing with particularity facts and law establishing the inference that the defendant violated a clearly established federal constitutional or statutory right. *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994).

The defense of qualified immunity also implicates the pleading requirements of Fed. R. Civ. P. 8(a). *Robbins v. Oklahoma,* 519 F.3d at 1248. Qualified immunity insures that public

officials are not subjected to "'broad-ranging discovery' that can be peculiarly disruptive of effective government." *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6 (1987).

> Although we apply "the same standard in evaluating dismissal in qualified immunity cases as to dismissals generally," complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically involve complex claims against multiple defendants. . . . Without allegations sufficient to make clear the "grounds" on which the plaintiff is entitled to relief, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is sufficient clear.

*Robbins,* 519 F.3d at 1249.  The court will proceed to apply these standards to the claim asserted in the Amended Complaint.

      A.    <u>Plaintiff's Eighth Amendment Claim</u>

The Eighth Amendment prohibits cruel and unusual "punishments," not cruel and unusual "conditions."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Where an Eighth Amendment claim is based upon conditions of confinement, an inmate must demonstrate that the deprivation suffered was "objectively 'sufficiently serious,'" and that the defendant had a "sufficiently culpable state of mind" or was "deliberately indifferent" to the inmate's health or safety.  *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991)).  Deliberate indifference requires a higher degree of fault than negligence or even gross negligence.  *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495-96 (10th Cir. 1990).  A defendant acts with deliberate indifference if his or her conduct "disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights."  *Id*. at 1496.  The Supreme Court explained the test for deliberate indifference:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of

>  facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.  *See also Barrie v. Grand County, Utah*, 119 F.3d 862, 869 (10th Cir. 1997).  "To be guilty of deliberate indifference, the defendant must know he is creating a substantial risk of bodily harm."  *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (internal quotation marks and citation omitted).

The Amended Complaint fails to properly allege a violation of the Eighth Amendment based upon the conditions of Mr. James' placement in punitive segregation.  Conditions of confinement that constitute cruel and unusual punishment must be measured by evolving standards of decency that mark the progress of a maturing society.  *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981) (Eighth Amendment violated only when an inmate is deprived of the "minimal civilized measure of life's necessities").  The Eighth Amendment requires prison officials to "provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care."  *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)).  *See also Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980) ("state must provide . . . reasonably adequate ventilation, sanitation, bedding, hygienic materials and utilities (i.e., hot and cold water, light, heat, plumbing)"); *Finney v. Arkansas Bd. of Corrections*, 505 F.2d 194, 207-08 (8th Cir. 1974) (holding that a prisoner in punitive solitary confinement should not be deprived of "basic necessities including light, heat, ventilation, sanitation, clothing and a proper diet").

The Amended Complaint does not allege a denial of basic necessities, such as food, clothing, shelter or sanitation.  Rather, Mr. James summarily alleges that he was denied "religious" rights and was prevented from contacting his family and attorney on the telephone.

He also claims that he was handcuffed while moving to and from his cell. Those allegations, standing alone, do not describe conditions of confinement "sufficiently serious" to constitute cruel and unusual punishment. Moreover, the Amended Complaint does not set forth any facts that would demonstrate Defendant Argeys could have drawn and actually did draw the inference that Plaintiff's conditions of confinement in punitive segregation posed a substantial risk of serious harm. In the absence of additional well-pled facts, I conclude that Mr. James' allegations fail to state a claim that Defendant Argeys subjected to him to a substantial risk of serious harm in violation of the Eighth Amendment.

      B.     <u>A Possible Due Process Claim</u>

While the Amended Complaint expressly invokes the Eighth Amendment, the allegations state that Defendant Argeys placed Mr. James in punitive segregation without filing a complaint or preparing the necessary record in support of that action. As a result of those omissions, Mr. James contends that he spent approximately 66 days in punitive segregation without any administrative record that would support that action. Because the court must liberally construe Plaintiff's *pro se* pleadings, I address whether Mr. James' allegations as sufficient to support a claim under the Due Process Clause of the Fourteenth Amendment.

As the Tenth Circuit explained in *Meek v. Jordan*, 534 F. App'x 762, 765 (10th Cir. 2013), on a motion to dismiss, the court must decide a threshold question: has the plaintiff alleged facts that would plausibly implicate a protected liberty interest?

> For inmates being punished for misconduct, a liberty interest exists only when the penalty lengthens the confinement or involves an "atypical and significant hard ship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

*Id.* In this case, it appears that the length or duration of Plaintiff's confinement did not change

as a result of the time he spent in punitive segregation at BVCF.  Thus, as in *Meek,* the issue in this case "is whether 60 days [or so] in punitive segregation would involve an atypical and significant hardship on [Mr. James] in relation to the ordinary incidents of prison life."  *Id.*

In analyzing a prisoner's due process claim, the court's inquiry does not focus on the language of specific prison regulations, but rather on the specific conditions alleged in the complaint relative to the ordinary incidents of prison life.  *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (internal quotation marks and citation omitted).  Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination. . . ."  *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at 485-87).

As a general proposition, prisoners do not have a constitutionally recognized liberty interest in their security classification or placement.  *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (Colorado laws and regulations do not entitle inmates to remain in the general population absent certain conduct).

The Tenth Circuit has identified relevant factors to consider when determining whether placement in administrative segregation implicates a protected liberty interest:  (1) whether "the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) [whether] the conditions of placement are extreme; (3) [whether] the placement increases the duration of confinement . . . ; and (4) [whether] the placement is

indeterminate." *Estate of DiMarco v. Wyoming Department of Corrections*, 473 F.3d 1334, 1342 (10th Cir. 2007). "While courts in this circuit have used these factors to guide the liberty interest analysis, we have never suggested that the factors serve as a constitutional touchstone." *Rezaq v. Nalley*, 677 F.3d 1001, 1012 (10th Cir. 2012) (citations omitted). And "any assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *DiMarco*, 473 F.3d at 1342 (citation omitted).

In this case, it appears that Mr. James was placed in punitive segregation at BVCF for no more than 66 days.[4] Placement for that limited duration, standing alone, does not create a cognizable liberty interest that triggers the protections of due process. *See, e.g., Gaines v. Stenseng*, 292 F.3d 1222, 1226 (10th Cir. 2002) ("Finally, we note that the holding in this case is limited to the length of the seventy-five day disciplinary segregation. Disciplinary segregation for some lesser period could fail as a matter of law to satisfy the atypical and significant requirement in a case in the future.") (internal quotation marks and citation omitted)). *Cf. Meek*, 534 F. App'x at 765 (plaintiff failed to plead "any facts that would plausibly indicate that 60 days in disciplinary segregation is atypical in relation to the ordinary incidents of prison life") (citing *Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005) (two months in punitive segregation did not trigger a liberty interest); *Scott v. Crowley County Correctional Facility*, No.

---

[4]The Amended Complaint does not specify why Defendant Argeys transferred Plaintiff to punitive segregation; only that the transfer occurred after Mr. James identified other inmates with whom he might have "possible problems." That allegation, without more detail, precludes the court from determining whether Plaintiff's placement in segregation "relate[d] to and further[ed] a legitimate penological interest, such as safety or rehabilitation." On this record, I find that this *DiMarco* factor weighs slightly in favor of Mr. James.

03-1253, 2003 WL 22093917, at *2 (10th Cir. Sept. 10, 2003) (65 days in segregation did not impose an "atypical and significant hardship in relation to the ordinary incidents of prison life"); *Blum v. Fed. Bureau of Prisons*, No. 98-1055, 1999 WL 638232, at *3 (10th Cir. Aug. 23, 1999) (ninety-day disciplinary detention in segregation did not differ in degree and duration from ordinary incidents of prison life to create a protected liberty interest).

As for his specific conditions of confinement while in punitive segregation, Plaintiff contends, in part, that his ability to communicate with family members and his attorney was restricted. Yet, a prisoner does not have a protected liberty interest in visitation privileges. *See Jenner v. McDaniel*, 123 F. App'x 900, 905 (10th Cir. 2005). *Cf. Overton v. Bazzetta*, 539 U.S. 126, 137 (2003) (restrictions on visitation privileges do not represent "a dramatic departure from accepted standards for conditions of confinement"); *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (holding that plaintiff had no constitutional right to visitation privileges); *Dunford v. McPeak*, No. 7:08cv00018, 2008 WL 204481, at *2 (W.D. Va. Jan. 24, 2008) ("[n]either prisoners nor would-be visitors have a constitutional right to visitation . . . [i]n sum, visitation is a privilege, not a constitutional right"). Similarly, Mr. James' claim of reduced access to legal information does not establish a protected liberty interest in the absence of any alleged actual injury. *Cf. Watson v. Dorsey*, No. 99-2205, 215 F.3d 1338 (10th Cir. Feb. 29, 2000); *Vasquez v. Zavaras*, No. 95-1501, 82 F.3d 427 (10th Cir. Apr. 9, 1996); *Gorton v. Miller*, No. CIV-08-1342-F, 2009 WL 2252112, at *3 (W.D. Okl. Jul. 28, 2009). *See also Lewis v. Casey*, 518 U.S. 343, 349-53 (1996) (a plaintiff alleging denial of access to the courts must demonstrate he has suffered actual injury by showing that the defendant's acts hindered his ability to pursue a non-frivolous legal claim); *Twyman v. Crisp*, 584 F.2d 352, 357 (10th Cir. 1978) "restricted access to

the law library is not per se denial of access to the courts").

Even if the court broadly construes the Amended Complaint to encompass a due process claim, Mr. James has failed to allege facts that plausibly state a protected liberty interest. Without an underlying liberty interest, Plaintiff was not deprived of constitutionally mandated due process protections. Accordingly, the Amended Complaint must be dismissed as to Defendant Argeys.

*4.     Injunctive Relief*

Actions in federal court seeking injunctive relief against state officials are not always barred by the Eleventh Amendment. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908) (holding that the Eleventh Amendment generally does not bar official capacity claims seeking prospective injunctive relief from a state official). *See also Will*, 491 U.S. at 71 n. 10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' ") (quoting *Kentucky v. Graham*, 473 U.S. at 167 n. 14).

Plaintiff's Amended Complaint requests injunctive relief in the form of an order requiring the CDOC Headquarters "to move [him] to another Level III medium facility as soon as possible."[5]  *See* doc. #19. As Plaintiff is not longer at BVCF, his request for injunctive relief is now moot and should be denied on that basis. *See Ricco v. Conner,* No. 04–3261, 146 Fed.

---

[5]The CDOC website describes Fremont Correctional Facility as a "mixed custody, Level III facility." *See Triplet v. Franklin*, No. 06-6247, 365 F. App'x 86, 92 n.8 (10th Cir. Feb. 5, 2010) (taking judicial notice of Oklahoma Department of Corrections' website); *N.M. ex rel. Richardson v. Bureau of Land Mgmt.,* 565 F.3d 683, 702 n. 22 (10th Cir. 2009) (taking judicial notice of information on "[t]he websites of two federal agencies"). *Cf. Vibe Techs., LLC v. Suddath,* No. 06–cv–00812–LTB–MEH, 2006 WL 3404811, at *5 n. 2 (D. Colo. Nov. 22, 2006) ("This Court may take judicial notice of court documents and matters of public record.").

App'x. 249, 253 (10th Cir. Aug. 8, 2005) (prisoner no longer in administrative segregation does not have viable claims pertaining to the administrative segregation sanction) (citation omitted); *Smith v. Hundley,* 190 F.3d 852, 855 (8th Cir. 1999) (inmate's claims for declaratory and injunctive relief regarding prison conditions were moot when he was transferred to another facility and was no longer subject to those conditions) (citations omitted); *Weaver v. Wilcox,* 650 F.2d 22, 27 n. 13 (3d Cir. 1981) (stating that prisoner's transfer from the prison moots claim for injunctive and declaratory relief with respect to prison conditions).

## CONCLUSION

In view of the foregoing analysis, Defendant Argeys' Motion to Dismiss (Doc. #23) is GRANTED. No claims or Defendants remaining, this civil action is dismissed in its entirety.

DATED this 26th day of February, 2015.

BY THE COURT:

  s/Craig B. Shaffer
United States Magistrate Judge